| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND, ss | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO.: |

BRIAN ROBERTSON,

    Plaintiff,

v.      **COMPLAINT**

BARBER FOODS, LLC, TYSON FOODS, INC. and SCOTT SCHMITZ

    Defendants.

NOW COMES Plaintiff Brian Robertson and hereby complains against the defendants Barber Foods, LLC, Tyson Foods and Scott Schmitz as follows:

1. Plaintiff, Brian Robertson, ("Robertson") is an individual residing in Omaha, Nebraska. Robertson was employed by Barber Foods, LLC and Tyson Foods as the Food Safety and Quality Assurance Manager.

2. Defendant Barber Foods, LLC is a Maine Limited Liability Company operating a food manufacturing facility in Portland, Maine.

3. Defendant Tyson Foods, Inc. is a Corporation with a principal place of business in Springdale Arkansas. Tyson Foods, Inc. is the parent company of Barber Foods. Defendants Tyson Foods, Inc. and Barber Foods will hereinafter collectively be referred to as Tyson Foods.

4. Defendant Scott Schmitz ("Schmitz") is a resident of Portland, Maine. Schmitz is the General Manager at Tyson Foods.

5. Robertson was employed at Tyson Foods from December, 2016 through September 24, 2018.

6. Robertson's job included overseeing food safety quality, which included involvement in plant inspections at Tyson Foods.

7. Tyson Foods was subject to two different types of inspections. One is a government health and safety USDA jurisdiction, the other is private inspection by independent certification agencies. Inspections by independent certification agencies relate to credentials; the credential is not regulatory and does not relate to the company's ability to engage in manufacturing.

8. Robertson was responsible for supervising several members of a team involved in plant operation. Members of Robertson's team interacted with and impacted plant operation.

9. Schmitz, who was the General Manager, had overall supervisory authority over plant operation.

10. In August, 2018 Schmitz confronted a female technician who was a member of Robertson's Quality Assurance team. Schmitz was upset about two hours of downtime in the plant that occurred as a result of her decision of necessary Quality Assurance matters. Schmitz was extremely aggressive and verbally assaultive toward the female employee, who was a subordinate to Schmitz. As a result of Schmitz's behavior he made the female employee cry.

11. Robertson walked in toward the end of the encounter in which Schmitz was berating the female employee on Robertson's team. Based on Robertson's observations and knowledge of Schmitz, Schmitz was acting the way he was toward the employee because she was a female subordinate employee and he could intimidate her. After the encounter the female employee was shaking and crying.

12. The next morning Schmitz approached the female employee and asked her for a hug. There was another technician in the room who was male and Schmitz shook his hand, he offered no hug. Robertson was very concerned about Schmitz's behavior. Robertson concluded that Schmitz was harassing, discriminating against, and intimidating the employee because of who she was. He felt it was inappropriate and

illegal and he further felt that it was his responsibility to speak up in opposition to the behavior.

13. At the conclusion of the daily staff meeting, Robertson pulled Schmitz aside, along with Jessica Howard, the Tyson Foods human resources representative who had been present at the staff meeting. When pulling Schmitz aside, Robertson told Schmitz in front of Jessica Howard that his behavior toward the person on Robertson's team was inappropriate. Robertson told Schmitz that it was not acceptable to treat the employee the way he had and Robertson asked him to engage him in any future conversations. After Schmitz left, Robertson described in detail to Jessica Howard of human resources what he had observed and explained his concerns.

14. The next day after Robertson confronted Schmitz, on August 8, 2018, Schmitz came to Robertson's office complaining about Robertson's quality assurance practices. During the conversation Schmitz expressly complained about Robertson reporting Schmitz's treatment of the female on Robertson's team to human resources. Schmitz said that instead Robertson should have just explained his (Schmitz's) sense of humor to the female member of Robertson's team.

15. During the meeting, Schmitz further complained about overtime costs for quality assurance issues; Schmitz expressly stated that he has had to "go over Robertson's head" in the past and threatened that he would do it again. Robertson learned from others in the plant that Schmitz was saying to others that Robertson had "stabbed him in the back" and that Robertson should not have gone to human resources with his concerns. Based on the meeting and the statements made by Schmitz, Robertson concluded that Schmitz was threatening to retaliate against Robertson because Robertson had spoken up about Schmitz's treatment of an employee.

16. After the meeting with Schmitz, Robertson complained in writing to Jessica Howard in human resources about Schmitz's threats. Robertson complained to

3

Jessica Howard that Schmitz was threatening him and was planning retaliating against him in some way.

17. Within weeks, a private credentialing organization conducted an audit of the facility. Findings were issued, which is typical of most audits. One of the findings was that the plastic that was hung during production to protect employees from a continuous belt washing system for certain types of production runs, had to be removed. The plant, through Robertson's Quality Assurance team, was required to submit a response to the findings in the form of a corrective action addressing the steps the plant would take with regard to the findings. The response to the audit findings will hereinafter be referred to as the "Corrective Action."

18. Schmitz was vehemently opposed to removing the plastic and had overall authority over operations in the plant. He was necessary to any response to the Corrective Action.

19. Schmitz instructed his team not to attend a meeting which Robertson convened to prepare a Corrective Action, whether by removing the plastic or by taking other steps. Schmitz insisted that Robertson's Quality Assurance team file an appeal. Robertson's team agreed but stressed that an alternative plan was needed in the event the appeal was not successful.

20. Schmitz refused to participate in any planning discussions. Instead, he insisted, as General Manager, that the plastic would stay in place on the machinery, even though Schmitz knew that Robertson would ultimately be responsible for complying with the Corrective Action.

21. Schmitz further refused to engage in any effort to implement an alternative to the use of plastic on the line. Schmitz instructed his team not to participate in meetings in which a solution was discussed.

22.  Schmitz's actions were in violation of his duties as the General Manager of the plant.  Schmitz's actions violated Tyson Foods obligations to comply with private audit standards, violated Robertson's authority and responsibility for food safety and violated the obligation to create a Corrective Action as well as the Corrective Action itself.

23.  Robertson's team followed Schmitz wishes and filed the appeal he requested.  It was denied.

24.  Meanwhile the time for implementing the Corrective Action was passing by as the appeal was pursued and Schmitz refused to cooperate.  Robertson's team spent much of the time permitted to address the Corrective Action formulating the appeal argument while proposed Corrective Actions were tabled at the direction of Schmitz.  When the appeal was denied Robertson's Quality Assurance team had less than a week to address the issue.  Robertson had reached out to corporate headquarters for support and guidance on solutions and got no response.

25.  The entire time that Schmitz refused to cooperate with Robertson's Quality Assurance team, his motive was to retaliate against Robertson for reporting Schmitz to Human Resources for his illegal treatment of the female employee on Robertson's team.  Schmitz had also threatened "to go over Robertson's head."

26.  Without the cooperation of Schmitz and without support from Robertson's superiors, Robertson determined that the only option was to remove the plastic from the machine on the line and then work with production to find some kind of an alternative long-term solution.

27.  Consistent with this resolution, Robertson submitted a written Corrective Action to the third-party audit agency.  At the time that Robertson submitted the written Corrective Action, he viewed the removal of the plastic to be a temporary solution.  Robertson therefore indicated the Corrective Action that the plastic had been removed

and would not be used on a daily basis. Consistent with statements in the Corrective Action, Robertson had the plastic taken down and instructed a member of his team to obtain a photo with the plastic removed. Robertson never instructed anyone to put the plastic back up.

28. In the course of a meeting when questioned about the plastic, Robertson told employees if there was a need to use it from time to time the plastic could be used, but he stressed not on a daily basis.

29. Robertson was out of the office on September 11th, 12th and 13th and was not aware that the plastic had been put back up immediately.

30. Without consulting Robertson and while Robertson was out of the plant on personal and vacation time, the plastic was ordered to be replaced on the production line.

31. Immediately upon the plastic being replaced on the production line, Schmitz made a knowingly false report to Tyson Foods that Robertson had falsified the Corrective Action to the private credentialing agency.

32. Schmitz's report was knowingly false for any or all of the following reasons (1) Schmitz knew or should have known that the plastic was replaced without Robertson's knowledge; (2) Schmitz ordered the plastic replaced; (3) Schmitz influenced another employee to put the plastic back up; (4) Schmitz misrepresented to another employee that the plastic should be removed and immediately replaced; (5) Schmitz knew that the plastic would have to be taken down on a daily basis and then used on a temporary basis, consistent with Robertson's corrective action report and Schmitz refused to follow Robertson's plan.

33. Tyson Foods investigated Schmitz's report. Jessica Howard in human resources, the very same representative to whom Robertson complained about Schmitz's threats of retaliation conducted the investigation.

34. Tyson Foods failed to investigate Robertson's complaints of retaliation against Schmitz and failed to consider it in connection with Schmitz's report.

35. In contrast, Tyson Foods immediately credited Schmitz's report and falsely accused Robertson as engaging in dishonesty.

36. Tyson Foods conducted an inadequate, biased and incomplete investigation of Schmitz's complaint. Tyson Foods failed to give Robertson a fair opportunity to respond to the allegations made against him. Tyson Foods ignored the fact revealed by the investigation that another employee instructed the plastic be put back up. Tyson Foods ignored the fact that Robertson was not present when the plastic was put up on the line. Tyson Foods ignored the fact that Schmitz refused to operate the line without plastic. Tyson foods ignored Schmitz's retaliatory motives in making his report. Tyson Foods ignored other complaints against Schmitz and other threatening statements made by Schmitz. Tyson Foods disregarded Robertson's statements in response to the complaint.

37. Tyson Foods through its managers, supervisors, including Schmitz, and human resources reported to others that Robertson had not been truthful and engaged in dishonesty in his corrective action report to the private certification agency. Tyson Foods knew or should have known that these statements were false and were made by Tyson Foods with reckless disregard for their truth.

38. Tyson Foods issued a false written statement indicating that Robertson had issued a corrective action report that was not honest, accurate and had the appearance of promoting a cover up. All of these statements were false when made and Tyson Foods knew or should have known that they were false and were made by Tyson Foods with reckless disregard for their truth.

39. Robertson was never disciplined in his entire time at Tyson Foods. Robertson has never been terminated, suspended or disciplined at any other job, and in

fact received positive annual reviews and was awarded a retention bonus 9 months prior.

40. Tyson Foods terminated Robertson's employment on September 24, 2018 and issued the knowingly and recklessly false document that Robertson was inaccurate, not honest, appeared to engage in a cover up and was being deceptive.

41. Tyson Foods' reason given for Robertson's termination was false. The real reason for Robertson's termination was retaliation for his reporting Schmitz's illegal conduct toward the female employee on Robertson's team.

42. Schmitz expressly stated his intent to retaliate against Robertson. Tyson knew that Schmitz was engaged in a scheme to retaliate and took no action to stop or prevent the retaliation and, in fact, accepted and adopted the scheme. Robertson was treated differently because as a result of Schmitz's retaliation. Robertson was terminated, yet Schmitz was not disciplined at all for his treatment of the female employee or for his role in the plant's refusal to comply with Robertson's planned and required Corrective Action.

43. Tyson Foods ultimate solution to the Corrective Action is the same solution Robertson proposed. Tyson Foods promoted the employee who was responsible for putting the plastic back up on the line and has trained employees that the plastic will not be used on a daily basis but can be used as needed. The plastic was up for weeks following the incident and it is believed that it is currently in use on the line.

## Count I
## Violation of Maine Human Rights Act
## Tyson Foods

44. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1-43 of this Complaint as if fully set forth herein.

45. Tyson Foods is an employer within the meaning of the Maine Human Rights Act.

46. Robertson suffered an adverse job action when he complained about sexual harassment by a supervisor against an employee on his team. And then the supervisor manufactured a false report against Robertson in retaliation for the report Robertson made. The false report was adopted by Tyson Foods and used to manufacture a reason for terminating Robertson.

47. Tyson Foods retaliated against Robertson in violation of the Whistleblower provisions of the Maine Human Rights Act and in violation of the anti-retaliation provisions of the statute.

48. Tyson Foods willfully violated the Maine Human Rights Act by its conduct.

49. Robertson has suffered severe emotional distress, termination resulting in lost wages and benefits, and further harm as a result of Tyson Foods' conduct.

## Count II

### Violation of Title VII

### Tyson Foods

50. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-49 of this Complaint as if fully set forth herein.

51. Tyson Foods is an employer within the meaning of the Title VII, 42 U.S.C. 2000 *et seq.*

52. Robertson suffered an adverse job action when he complained about sexual harassment by a supervisor against an employee on his team and then the supervisor manufactured a false report against Robertson in retaliation for the report Roberson made, which false report was adopted by Tyson Foods and used to manufacture a reason for terminating Robertson.

53. Tyson Foods willfully violated Title VII by its conduct.

54. Robertson has suffered severe emotional distress, termination resulting in lost wages and benefits and further harm as a result of Tyson Foods' conduct.

### Count III

### Defamation

### Tyson Foods and Schmitz

55. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-54 of this Complaint as if fully set forth herein.

56. Schmitz made a false and defamatory statement concerning Robertson by stating that Robertson was dishonest, and he had ordered plastic be replaced on the production line, and that he had submitted a corrective action plan in response to the private audit that was false or inaccurate.

57. Tyson Foods made false and defamatory statements concerning Robertson by stating that Robertson had engaged in dishonesty, had made a false or inaccurate statement in the corrective action plan that was not honest or accurate and had the appearance of promoting a cover up.

58. Schmitz made an unprivileged publication of the false statements to individuals within and outside of Tyson Foods.

59. Tyson Foods made unprivileged publications of the false statements to individuals within and outside of Tyson Foods.

60. Schmitz, through his position as plant manager and role in the process that lead up to the corrective action and subsequent replacement of the plastic, knew or should have known that the statements he made were false and acted with a reckless disregard for the truth of the statements.

61. Tyson Foods, through its biased, inadequate and substandard investigation of Schmitz's report, knew or should have known that the statements it made were false and acted with a reckless disregard for the truth of the statements.

62. Schmitz and Tyson Foods acted negligently, recklessly and/or intentionally to retaliate against Robertson.

63. Robertson has suffered damage as a result

### Count IV

### Interference with Advantageous Economic Relations

### Schmitz

64. Plaintiff restates and realleges each and every allegation set forth in Paragraphs 1-63 of this Complaint as if fully set forth herein.

65. Robertson had an ongoing contractual relationship with Tyson Foods for which he had never been subject to discipline and in which he had been given positive performance reviews.

66. Schmitz, by means of fraud and intimidation in making false statements about Robertson's role and actions in connection with the Corrective Action, interfered with Robertson's relationship with Tyson Foods by procuring and causing Tyson Foods to discharge Robertson.

67. Robertson's employment with Tyson Foods would have continued in the absence of Schmitz's actions.

68. Robertson has been damaged by Schmitz's actions.

### Count V

### Interference with Prospective Economic Advantage

### Tyson Foods and Schmitz

69. Plaintiff restates and realleges each and every allegation set forth in Paragraph 1-68 as if fully set forth herein.

70. Robertson had prospective contractual relationships with employers in the greater Portland, Maine and New England area.

71. Schmitz and Tyson Foods knew of these prospective relationships. Tyson Foods acted through its managers and supervisors, including Schmitz who was the plant manager at Tyson Foods.

72. Schmitz and Tyson Foods acted with the intent to interfere with Robertson's prospective relationships by making false statements about his actions.

73. Schmitz and Tyson Foods caused interference with Robertson's prospective contractual relationships in that Robertson was not able to locate employment in the Portland, Maine area or the New England area.

74. Robertson has been damaged by Schmitz's and Tyson Foods's actions and his damages are reasonably foreseeable.

75. Schmitz and Tyson Foods acted improperly by making false statements and conducting a faulty and substandard investigation.

## Count VI

### Fraud

**Tyson Foods and Schmitz**

76. Plaintiff restates and realleges each and every allegation set forth in Paragraphs 1-75 of this Complaint as if fully set forth herein.

77. Schmitz and Tyson Foods made false representations about Robertson relating to his statements in the Corrective Action and regarding his actions relating to the renewed use of plastic about the corrective action. Tyson Foods acted through Schmitz who was the plant manager.

78. The false representations made by Schmitz and Tyson Foods were material statements of fact, including that Robertson was dishonest, had made inaccurate and false statements in the Corrective Action and that Robertson had played a role in the renewed use of plastic on the production line.

79. Schmitz and Tyson Foods made the statements knowing they were false and with a reckless disregard for the truth of the statements.

80. Schmitz made the statements to induce Tyson Foods to terminate Robertson in retaliation for the report Robertson made against Schmitz.

81. Robertson was damaged by the reliance on the false representation.

## Count VII

### Negligent Misrepresentation

### Schmitz

82. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 – 81 of this Complaint as if fully set forth herein.

83. Schmitz supplied false information to Tyson Foods in the course of his business for the guidance of Tyson Foods.

84. Tyson Foods relied on Schmitz's false information to terminate Robertson's employment.

85. Robertson was damaged by Schmitz's false statement.

## Count VIII

### Negligence

### Schmitz

86. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 – 85 of this Complaint as if fully set forth herein.

87. Schmitz had a duty to act reasonably and prudently in his role as plant manager at Tyson Foods.

88. Schmitz breached that duty by failing to engage in the process of creating the Corrective Action and then undermining it.

89. Robertson was damaged by Schmitz's conduct.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

Case 2:19-cv-00455-NT  Document 1-1  Filed 10/08/19  Page 14 of 14  PageID #: 19

EXHIBIT A

(a) enter judgment in his favor;

(b) award plaintiff damages for loss of wages;

(c) declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

(d) award compensatory and punitive damages in an amount to be determined at trial and prejudgment interest thereon;

(e) award Plaintiff nominal damages;

(f) award Plaintiff prejudgment interest;

(g) award Plaintiff his full costs, including reasonable attorney's fees, expert fees and costs; and

(h) award such further relief as is deemed appropriate.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

Dated this ___ day of September, 2019

_____
Sally A. Morris, Bar No. 8479
Attorney at Law
Six City Center, Suite 300
Portland, ME 04101
(207) 558-6161, Ext 109
Attorney for Plaintiff Brian Robertson

14