## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BRIAN ROBERTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:19-cv-00455-NT |
| | ) | |
| BARBER FOODS, LLC, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Brian Robertson alleges that the Defendants terminated his employment and falsely accused him of dishonest behavior in retaliation for reporting his supervisor, Defendant Scott Schmitz, to human resources for harassing a coworker. Based on this conduct, the Plaintiff has brought an eight-count Complaint against Defendant Barber Foods, LLC, its parent company Defendant Tyson Foods, Inc. (collectively "**Tyson**"),[1] and Schmitz, asserting federal and state law claims for unlawful retaliation as well as six state law tort claims. Compl. (ECF No. 5-3). This matter comes before me on the Defendants' motion to dismiss the Complaint for failure to state a claim under Federal Rule of Procedure 12(b)(6). Defs.' Mot. (ECF No. 6). For the reasons stated below, I **GRANT in part** and **DENY in part** the motion.

---

[1]    I follow the parties in referring to the two corporate Defendants collectively as Tyson. *See* Compl. ¶ 3 (ECF No. 5-3); *see generally* Defs.' Mot. (ECF No. 6); Defs.' Reply (ECF No. 11).

## BACKGROUND

Plaintiff Brian Robertson worked as the Food Safety and Quality Assurance Manager at Tyson's food manufacturing facility in Portland, Maine. Compl. ¶¶ 1–2. Robertson's job responsibilities included supervising several employees who were involved with plant operation and working with outside food safety inspectors. Compl. ¶¶ 7–8. Both the federal government and private, independent certification agencies inspected the Portland facility. Compl. ¶ 7.

Defendant Scott Schmitz is the General Manager of Tyson's Portland facility. Compl. ¶¶ 4, 9. Schmitz is responsible for overseeing plant operation. Compl. ¶ 9.

In August of 2018, Robertson observed Schmitz aggressively berating a female member of Robertson's team because Schmitz was upset that her decision on a quality assurance issue had idled the plant for two hours. Compl. ¶ 10. Schmitz's behavior caused the employee to shake and cry. Compl. ¶¶ 10–11. Robertson concluded that Schmitz was acting this way because the employee was a woman and Schmitz felt that he could intimidate her. Compl. ¶ 11.

The next day, Robertson observed Schmitz approach that female employee and ask her for a hug. Compl. ¶ 12. At the conclusion of the daily staff meeting, Robertson pulled Schmitz and Jessica Howard, a human resources representative, aside and explained to Schmitz that his behavior toward the female employee was inappropriate. Compl. ¶ 13. After Schmitz left, Robertson described Schmitz's behavior in full to Howard. Compl. ¶ 13. Robertson took these steps because he felt the responsibility to speak up in opposition to Schmitz's behavior, which Robertson considered inappropriate and illegal. Compl. ¶ 12.

2

Schmitz met with Robertson the next day, August 8, 2018. Schmitz told Robertson that he should have explained Schmitz's sense of the humor to the employee rather than complaining to human resources. Compl. ¶ 14. Schmitz also complained about overtime costs for quality assurance issues and threatened to "go over Robertson's head." Compl. ¶ 15. Robertson concluded that Schmitz was threatening to retaliate against him for reporting Schmitz's behavior to human resources. Compl. ¶ 15. Schmitz told other employees that Robertson "stabbed him in the back" and that Robertson should not have gone to Human Resources with his concerns. Compl. ¶ 15. Robertson submitted written complaints to Jessica Howard about Schmitz's threats. Compl. ¶ 16.

A few weeks after Robertson reported Schmitz, a private credentialing organization visited the plant for an inspection. Compl. ¶ 17. The audit found that a piece of plastic that protected employees from a belt washing system had to be removed. Compl. ¶ 17. Schmitz opposed removing the plastic, and he instructed his team not to meet with Robertson to prepare a corrective action in response to the audit. Compl. ¶¶ 17–18. Schmitz knew that Robertson was ultimately responsible for implementing a corrective action to respond to the audit. Compl. ¶ 20. Schmitz violated his general manager's duties by failing to work with Robertson, and he violated Tyson's duties to comply with private audit standards. Compl. ¶ 22.

After an unsuccessful appeal of the audit finding, pursued at the command of Schmitz, Robertson filed a corrective action with the auditor indicating that the plastic would not be used on a daily basis. Compl. ¶¶ 23–24, 27. Consistent with the

corrective action, Robertson had the plastic taken town and instructed a member of his team to obtain a photo with the plastic removed. Compl. ¶ 27. Robertson told employees that if there was a need to use the plastic, they could put it up from time to time but that they could not use it on a daily basis. Compl. ¶ 28. Robertson was out of the office from September 11–13, 2018, during which time the plastic was ordered to be replaced on the production line. Compl. ¶¶ 29–30.

Immediately after the plastic was replaced, Schmitz made a knowingly false report to Tyson that Robertson had falsified the corrective action to the private auditor. Compl. ¶ 31–32. Tyson credited Schmitz's report and conducted an inadequate investigation into the allegation that failed to give Robertson a fair opportunity to respond. Compl. ¶¶ 35–36. The company also did not investigate Robertson's report that Schmitz was retaliating against him and ignored crucial facts that would have led Tyson to the conclusion that Schmitz framed Robertson in retaliation for reporting Schmitz to Human Resources. Compl. ¶¶ 34, 36.

Tyson, through its managers and supervisors including Schmitz, reported to others that Robertson had been dishonest in responding to the private auditor. Compl. ¶ 37. Tyson terminated Robertson on September 24, 2018, and it issued a written statement about his behavior that it knew, or should have known, was false. Compl. ¶¶ 38, 40. Tyson knew that Schmitz was engaged in a scheme to retaliate against Robertson and accepted and adopted the scheme. Compl. ¶ 42. Tyson's ultimate response to the audit findings was to implement the solution that Robertson

had originally proposed—using the plastic on the production line only as needed, rather than on a daily basis. Compl. ¶ 43.

Robertson asserts that the false statements and retaliation by Schmitz and Tyson cost him his job and have prevented him from finding similar employment in the New England area. Compl. ¶¶ 31–42, 73. In September of 2019, the Plaintiff filed this action in state Superior Court. The Complaint asserts eight counts: (1) unlawful retaliation under the Maine Human Rights Act ("**MHRA**"), against Tyson; (2) unlawful retaliation under Title VII of the Civil Rights Act of 1964, against Tyson; (3) defamation, against Schmitz and Tyson; (4) interference with advantageous economic relations, against Schmitz; (5) interference with prospective economic advantage, against Schmitz and Tyson; (6) fraud, against Schmitz and Tyson; (7) negligent misrepresentation, against Schmitz; and (8) negligence, against Schmitz. Compl. ¶¶ 44–89; Superior Court Docket Record (ECF No. 5-1). The Defendants removed the action to this Court in October of 2019. Notice of Removal (ECF No. 1).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency" of a complaint. *Me. Educ. Ass'n Benefits Trust v. Cioppa*, 842 F. Supp. 2d 373, 376 (D. Me. 2012). The general rules of pleading require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted); *see Skinner v. Switzer*, 562 U.S.

521, 530 (2011) (complaint need not contain "an exposition of [plaintiff's] legal argument," nor must it "pin plaintiff's claim for relief to a precise legal theory").

To determine whether a complaint states a claim, courts in the First Circuit follow a two-step analysis. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) (internal quotations omitted). Then, taking all well-pleaded facts as true and "drawing all reasonable inferences in [plaintiff's] favor," the court must determine whether the complaint "plausibly narrate[s] a claim for relief." *Id.* (internal quotations omitted). "Plausible" means "more than merely possible" but does not require all facts necessary to establish a prima facie case. *Id.* at 717–18 (internal quotations omitted). Although a plaintiff need not establish a prima facie case of his claim at the pleading stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). Distinguishing sufficient from insufficient pleadings is a "context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## DISCUSSION

The Defendants argue that seven of the Plaintiff's eight counts must be dismissed for failure to state a claim. Defs.' Mot. 4–14. I discuss each count in turn.

## I.  Unlawful Retaliation (Counts I and II)

The Defendants first argue that the Plaintiff's claims for unlawful retaliation under the MHRA and Title VII should be dismissed because the Plaintiff fails to

allege that he exhausted his administrative remedies.[2] Defs.' Mot. 4–6. The Plaintiff counters that he need not allege exhaustion in his Complaint and that, in any event, the Defendants have firsthand knowledge of his exhaustion efforts because they were parties to his complaint before the Maine Human Rights Commission ("**MHRC**"). Pl.'s Opp'n 8–9 (ECF No. 10).

Neither Title VII nor the MHRA treats exhaustion of administrative remedies as a jurisdictional requirement. Rather, courts have interpreted exhaustion to be a condition precedent for bringing Title VII claims and for some forms of recovery under the MHRA.[3] *See Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 77–78 (1st Cir. 2016) ("[W]hile the right-to-sue-letter requirement [in Title VII] remains, it is simply a precondition to bringing suit, not a jurisdictional bar, and thus can be waived by the parties or the court.") (internal quotations omitted); *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 20–21 (1st Cir. 2001) (describing exhaustion requirements for both statutes

---

[2]      In their motion, the Defendants assert only that the Plaintiff has failed to "allege" exhaustion. Defs.' Mot. 4–6. In their Reply, the Defendants shift gears and briefly contend that the Title VII claims should be dismissed because the "Plaintiff did not comply with the exhaustion requirement." Defs.' Reply 1. Even if I were to entertain this new argument raised in a Reply, dismissal of the Title VII claim would not be warranted. As discussed below, failure to exhaust Title VII administrative remedies is an affirmative defense. A plaintiff's "[f]ailure to exhaust his administrative remedies 'will support a motion to dismiss only where [that failure] is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude.' " *Carney v. Town of Weare*, No. 15-CV-291-LM, 2017 WL 680384, at *6 (D.N.H. Feb. 21, 2017) (quoting *Citibank Glob. Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 23 (1st Cir. 2009)). At this point in the case, the facts do not establish this affirmative defense with certitude.

[3]      Before filing a Title VII claim in court, a plaintiff must generally check two administrative boxes: "the timely filing of a charge with the [Equal Employment Opportunity Commission ("**EEOC**")] and the receipt of a right-to-sue letter from the agency." *Vázquez-Rivera v. Figueroa*, 759 F.3d 44, 48 (1st Cir. 2014) (internal quotations omitted). Under the MHRA, a plaintiff seeking attorney's fees or monetary damages for employment discrimination must file a charge with the MHRC and wait for MHRC to take some final action. 5 M.R.S.A. § 4622; *Burnett v. Ocean Properties Ltd.*, 2:16-cv-00359-JAW, 2017 WL 1331134, at *9 (D. Me. Apr. 11, 2017).

as non-jurisdictional); *see also Ft. Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (explaining that Title VII charge-filing requirement is not jurisdictional). The federal and state statutes differ on whether a plaintiff must allege such exhaustion in his complaint.[4]

For Title VII, the "statutory scheme makes no mention of pleading requirements or questions of proof related to exhaustion." *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (citing 42 U.S.C. § 2000e-5). Thus, most courts agree that there is no requirement that a plaintiff allege exhaustion because failure to exhaust administrative remedies is an affirmative defense—one subject to waiver or estoppel "when equity so requires." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *see also Martínez-Rivera*, 812 F.3d at 77; *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505–06 (1st Cir. 1996) (Title VII requirement that a plaintiff name the defendant in the Equal Employment Opportunity Commission charge before heading to court is non-jurisdictional, and defendant waived this affirmative defense by not asserting it in its answer); *Hardaway*, 879 F.3d at 490–91 (adopting approach from other circuits of treating Title VII exhaustion as affirmative defense and reversing district court's ruling that the "exhaustion requirement is a pleading requirement incumbent on a Title VII

---

[4]    Federal Rule of Civil Procedure 9(c) governs how a plaintiff may plead conditions precedent, but it does not impose an affirmative duty on plaintiffs to plead all conditions precedent. Instead, the substantive law informs whether such a pleading is required. *See* 5A Wright & Miller, Fed. Prac. & Proc. § 1303 ("Rule 9(c) does not impose an obligation on plaintiffs to plead the performance or occurrence of conditions precedent. Rather, it is the applicable substantive law that determines whether the performance or occurrence of conditions precedent is an element of the claim; if so, Rule 8(a)(2) places the burden on the plaintiff to plead that element (and all others) to state a claim successfully.").

plaintiff"). Requiring a plaintiff to plead exhaustion in his complaint makes little sense when the exhaustion requirement can be waived by the parties or the court.[5] The Defendants cite no case holding that Title VII imposes such a pleading requirement. The Defendants' motion is denied as to Count II.

In contrast to Title VII, the MHRA appears to impose a pleading requirement on a plaintiff seeking monetary relief. The statute expressly states that a plaintiff cannot recover attorney's fees or damages unless he "*alleges* and establishes" that, before filing suit, he filed a charge of discrimination with the MHRC and the MHRC

---

[5]       It is unclear if the Plaintiff here has obtained a right-to-sue letter from the EEOC, although it does appear from the record that the Plaintiff has requested one. (ECF No. 10-1.) Generally, a plaintiff bringing a Title VII claim must obtain a separate right-to-sue letter from the EEOC, even where she has already obtained a letter from the MHRC. This is true even if a work-sharing agreement between the EEOC and the state agency permits a complainant to file a single charge with either agency, which then may be considered dual filed at both agencies. *See Taite v. Bridgewater State Univ.*, 236 F. Supp. 3d 466, 477 (D. Mass. 2017) (citing *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009)); *Richards v. City of Bangor*, 878 F. Supp. 2d 271, 279 (D. Me. 2012).

          Nevertheless, because the requirement of a right-to-sue letter is not jurisdictional, it is subject to equitable modification, including "waive[r] by the parties or the court." *Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 77–78 (1st Cir. 2016) (internal quotations omitted); *see also Black v. Brown Univ.*, 555 F. Supp. 880, 88485 (D.R.I. 1983) (Selya, J.) (equitable modification warranted where, based on communication from the EEOC, plaintiff was "lulled into the sanguine belief that he did not have to obtain a separate right-to-sue letter from the EEOC"); *Gardner v. Md. Mass Transit Admin.*, Civ. No. JKB-18-365, 2018 WL 2193692, at *5 (D. Md. May 14, 2018) ("If the EEOC ends its investigation, or had finished actively handling the case when plaintiff requested the letter, but it . . . fails to send the requested letter, then the court may take jurisdiction over the case without the danger of stepping on the EEOC's toes."); *Schultz v. Windstream Commc'ns, Inc.*, No. 4:08-cv-3086, 2008 WL 2773974, at *2 (D. Neb. July 14, 2008) (because failure to receive a right to sue letter "can be corrected after the action has commenced provided the plaintiff promptly takes measures to cure the defect," it would be anomalous to require a plaintiff to allege exhaustion at the outset in order to avoid dismissal under Rule 12(b)(6)); *Hill v. Vill. of Franklin Park*, No. 07-cv-4335, 2008 WL 686256, *5 (N.D. Ill. Mar. 11, 2008) (finding it "inequitable to dismiss" plaintiff's complaint for failure to obtain right-to-sue letter where 365 days had passed since she filed with the EEOC and she had "contacted the EEOC on 'several occasions' regarding the status of the right-to-sue letter"); *Palmer v. N.Y. State Office of Court Admin.*, No. 5:00-cv-00110 (HGM/GHL), 2008 WL 11504953, *2 (N.D.N.Y. Jan 7, 2008) ("Plaintiff cannot be responsible for the acts or omissions of the EEOC or attorney general and should therefore not be penalized for them."); *Kahn v. Pepsi Cola Bottling Grp.*, 526 F. Supp. 1268, 1270 (E.D.N.Y. 1981) ("[T]he failure to receive a right to sue letter is not fatal when the plaintiff has requested one, and through no fault of [her] own the EEOC refuses to issue it."); 4 Larson on Employment Discrimination § 74.02 ("[C]ourts have allowed suits to proceed in situations where the absence of a right-to-sue letter was due entirely to the EEOC's error.").

has taken final action or issued a right-to-sue letter. 5 M.R.S.A. §§ 4611–12, 4622 (emphasis added). Although the First Circuit has interpreted this provision as creating a condition precedent, it has held that failure to exhaust MHRA remedies cannot be characterized as a "mere affirmative defense" because the statute places the burden on the plaintiff to plead compliance. *Walton*, 272 F.3d at 20–21 (concluding that Federal Rule of Civil Procedure 9(c) guides this pleading requirement).

Here, the Complaint contains no allegation that the Plaintiff has satisfied the conditions precedent for the MHRA. This omission could preclude the Plaintiff from recovering attorney's fees, civil penal damages, compensatory damages, or punitive damages. 5 M.R.S.A. § 4622; *see also Thayer Corp. v. Reed*, No. 2:10–cv–00423–JAW, 2011 WL 2682723, at *18 (D. Me. July 11, 2011). Because the exhaustion requirement is not jurisdictional, the omission does not bar the courthouse door to the extent that the Plaintiff seeks other relief, and the Plaintiff here seeks declaratory relief in addition to damages. Since the Plaintiff's Opposition and attachments thereto suggest that the Plaintiff exhausted his administrative remedies with the MHRC, the most expeditious course is to allow the Plaintiff fourteen (14) days to amend his Complaint to include at least the allegations of administrative exhaustion that he asserted in his briefing on this motion to dismiss.[6] *See* Fed. R. Civ. P. 15(a)(2) ("The

---

[6]      Pursuant to Rule 9(c), a plaintiff is permitted to "allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c); *see also* 5A Wright & Miller, Fed. Prac. & Proc. § 1302 ("Rule 9(c) applies in all actions in the federal courts, even when the pleading practice in the state in which the court is sitting is different."). Thus, a complaint need only contain "an *adequate* 'general averment' that [the plaintiff] ha[s] met all conditions precedent." *Walton*, 272 F.3d at 22 (holding that plaintiff met this standard for MHRA claim where complaint alleged that plaintiff had

court should freely give leave [to amend] when justice so requires."). The Defendants' motion is denied as to Count I.

## II.    Defamation (Count III)

Under Maine law, the elements of a defamation claim are: "1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence on the part of the publisher; 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996) (citing *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)).

The Defendants argue that the Plaintiff's defamation claim against both Schmitz and Tyson must be dismissed. I address the claim against each Defendant separately.

### A.    Schmitz

#### 1.    Publication

The Defendants first argue that the Plaintiff fails to identify the person to whom Schmitz made a false statement. Defs.' Mot. 7. But, the Complaint alleges that Schmitz made an intentionally dishonest statement to a Tyson employee, and there is no requirement that the Plaintiff name the employee. *See* Compl. ¶¶ 31–33. Moreover, the Complaint alleges that Jessica Howard, a Tyson human resources employee, investigated Schmitz's claim and that Schmitz's false statement led to Robertson's termination. Compl. ¶¶ 33, 40. These assertions and the reasonable

---

satisfied "all conditions precedent," including filing discrimination charge with EEOC, even though plaintiff did not explicitly allege compliance with all specific preconditions) (emphasis in original).

inferences in the Plaintiff's favor sufficiently allege that Schmitz publicized his false statements to a Tyson employee.

The Defendants further suggest that intra-corporate publication (that is, Schmitz's statements to another Tyson employee) cannot support a defamation claim. Defs.' Reply 2 (ECF No. 11). However, the Law Court has held that statements among a company's own employees, if unprivileged, constitute publications. *Staples v. Bangor Hydro-Elec. Co.* (*Staples II*), 629 A.2d 601, 604 (Me. 1993) (manager's statement to director of personnel that plaintiff, an IT employee, was sabotaging the company's computer was a publication); *Heselton v. Wilder*, 496 A.2d 1063, 1067 (Me. 1985) (variety store manager's statement to the company's loss prevention department that the plaintiff had taken money from the till satisfied publication element of a plaintiff's defamation claim). The Plaintiff, accordingly, has alleged that Schmitz published a false statement to a third party. *See Hill v. Town of Lubec*, 609 A.2d 699, 701–02 (Me. 1992).

## 2. Privilege

The Defendants next argue that the Plaintiff fails to allege that any publication by Schmitz was unprivileged. Defs.' Mot 7. The Plaintiff responds that the Schmitz abused any privilege that existed because he acted with malice. Pl.'s Opp'n 12–13.

" 'One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused.' " *Rice v. Alley*, 791 A.2d 932, 936 (Me. 2002) (quoting Restatement (Second) Torts § 593 (1977)). "A conditional privilege against liability for defamation arises in settings where society has an

12

interest in promoting free, but not absolutely unfettered, speech." *Lester*, 596 A.2d at 69. "A conditional privilege 'may arise in any situation in which an important interest of the recipient of a defamatory statement will be advanced by frank communication.' " *Rice*, 791 A.2d at 936 (quoting *Cole v. Chandler*, 752 A.2d 1189, 1193 (Me. 2000)).

Schmitz's disclosure of food safety matters to Tyson would presumably give rise to a conditional privilege. Schmitz, however, would abuse that privilege if he made a false statement with malice. *See Morgan v. Kooistra*, 941 A.2d 447, 456 (Me. 2008). "Malice includes making a statement knowing it is false, with a reckless disregard for its truth, or acting out of spite or ill will." *Id.* The Plaintiff alleges that Schmitz knowingly made a false statement to Tyson, Compl. ¶ 31, and he thus adequately pleaded that Schmitz abused a conditional privilege.

### 3. Harm

The Defendants also allege that the Plaintiff has failed to plead special harm. Defs.' Mot. 7. "Special harm . . . is the loss of something having economic or pecuniary value." Restatement (Second) of Torts § 575 comment b (1977). The Law Court has long held, however, that a plaintiff need not establish special harm to recover for a defamatory statement that "ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, profession." *Boulet v. Beals*, 177 A.2d 665, 666 (Me. 1962); *see also Staples v. Bangor Hydro-Elec. Co.* (*Staples I*), 561 A.2d 499, 501 (Me. 1989) (plaintiff IT employee not required to allege special harm where his former supervisor falsely accused him of sabotaging company's computers because the supervisor's "accusation relate[d] to his

13

profession"). Schmitz's statements that the Plaintiff falsified a corrective action to a private auditor likewise strike at the heart of the Plaintiff's credibility as a quality assurance professional, and the claim against Schmitz is therefore actionable irrespective of special harm. *See Boulet*, 177 A.2d at 667, 669. I conclude that Count III against Schmitz survives.

### B. Tyson

#### 1. Publication

The Defendants first argue that the Plaintiff's defamation claim against Tyson fails because the Plaintiff does not allege publication to a third party. The Plaintiff responds that Tyson issued a written report falsely accusing him of dishonest conduct and the report has prevented him from securing employment in New England. Compl. ¶¶ 38, 40, 72–73. A reasonable inference from these allegations is that Tyson published the report in such a manner that it reached Robertson's potential employers in the region.

Additionally, Schmitz's knowingly false report to his superiors can be imputed to Tyson. The Law Court has held: " '[t]he communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal.' " *Staples II,* 629 A.2d at 604 (quoting Restatement (Second) of Torts § 577 comment i (1977)).[7]

---

[7]    I sidestep the Plaintiff's further argument that Maine law recognizes the doctrines of negligent publication and compelled self-publication. *See* Pl.'s Opp'n 12 (ECF No. 10) (citing *Carey v. Mt. Desert Island Hosp.*, 910 F. Supp. 7, 10 (D. Me. 1995)).

###### 2. Privilege

The Defendants also argue that any written statements by Tyson were privileged. Defs.' Mot. 8. The Plaintiff responds that, even if the Defendants are entitled to a conditional privilege, that privilege was abused because Tyson acted with malice. Though "[i]nadequate investigation into the truth of the statement is not enough to establish malice," *see Morgan*, 941 A.2d at 456, the Plaintiff alleges that Tyson knew its written report about the Plaintiff's conduct was false. Compl. ¶ 40. Further, the Plaintiff alleges that Tyson was aware that Schmitz engaged in a scheme to retaliate against the Plaintiff and that Tyson accepted and adopted that scheme. Compl. ¶ 42. Because I find that the Plaintiff has alleged facts that support an inference that Tyson abused its conditional privilege, I conclude that the Plaintiff has also stated a cognizable claim for defamation against Tyson. *See Rice*, 791 A.2d at 937.

### III.   Interference with Prospective Economic Advantage (Count V)

Under Maine law, "[t]ortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (footnotes omitted) (citing *James v. MacDonald*, 712 A.2d 1054, 1057 (Me. 1998)).

The Defendants argue that the Complaint fails to demonstrate that the Plaintiff had a valid prospective economic advantage, fails to identify the false statements made to prospective employers, and fails to allege causation. Defs.' Mot.

10–11. The Plaintiff contends that he need only identify "general ongoing business interests," rather than an existing contract, to state a claim. Pl.'s Opp'n 13 (citing *James*, 712 A.2d at 1057). *James v. MacDonald* does not support the broad proposition that any and all employment opportunities, regardless of whether a plaintiff pursued them, would constitute "prospective economic advantage." In *James*, the plaintiffs had for years leased space on a pier to conduct their sea urchin business, through which they had built "ongoing relationships" with urchin divers and a seafood distributor. Despite a verbal agreement that they could lease the space for the next season, the pier owner informed the plaintiffs at the last minute that they could not operate from the pier. *James*, 712 A.2d at 1057. *James* thus involved a pre-existing business arrangement.

In a case closer to the facts of this case, this Court concluded that a plaintiff who was allegedly rejected for a position with a new employer because of a negative job reference provided by his former employer had stated a trial-worthy claim of tortious interference with prospective economic advantage under Maine law. *Barker v. Int'l Paper Co.*, 993 F. Supp. 10, 16–17 (D. Me. 1998) (citing *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 50 (Me. 1996)). But in *Barker*, the plaintiff had already interviewed for a job with the prospective employer and had been told that he would receive an offer. *Id.* at 13. The job allegedly fell through after the prospective employer talked with the former employer. *Id.*

The Plaintiff identifies potential "employers in Greater Portland, Maine and New England" as "prospective contractual relationships." Compl. ¶ 70. The Plaintiff

16

alleges that the Defendants knew of these prospective relationships and interfered with them by making false statements about his actions which caused him to be unable to locate employment in New England. Compl. ¶¶ 71–73. The Complaint neither identifies specific prospective employers nor alleges that the Plaintiff ever actually applied for any positions in New England. These are facts that would be known to the Plaintiff. Nor does the Complaint allege what Tyson told any prospective employer that caused the Plaintiff to lose out on any particular employment opportunity. *See Fisk v. Mid Coast Presbyterian Church*, 2:16-cv-00490-JDL, 2017 WL 1755950, at \*7 (D. Me. May 4, 2017) (dismissing claim where complaint lacked facts about potential employment with another organization and failed to support inference that defendants interfered). Because these allegations are insufficient to state a cognizable claim for tortious interference, the Motion to Dismiss Count V is granted.

## IV.   Fraud (Count VI)

"A person is liable for fraud if the person (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Grover v. Minette-Mills, Inc.*, 638 A.2d 712, 716 (Me. 1994).

The Defendants contend that the Plaintiff's fraud claim against Tyson fails because the Plaintiff has not alleged sufficient facts to satisfy the heightened pleading standard of Rule 9(b). The Plaintiff responds that the Complaint alleges sufficient

17

facts to survive a Rule 9(b) challenge against Schmitz, [8] and that Tyson, as Schmitz's principal, is liable for his fraudulent conduct. Pl.'s Opp'n 14–15.

"Under Maine law a principal is liable for the fraudulent misrepresentations made by his agent within the scope of the agent's authority, whether or not the principal knows of the agent's misconduct." *Arbour v. Hazelton*, 534 A.2d 1303, 1306 (Me. 1987); *Crowley v. Dubuc*, 430 A.2d 549, 552 (Me. 1981); *see also Forum Fin. Grp., Ltd. Liab. Co. v. President, Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 98 (D. Me. 2001). The Plaintiff alleges that Schmitz's fraudulent report about Robertson was made in his role as general manager of the Tyson plant. *See* Compl. ¶¶ 4, 9, 31. Under Maine agency law, the Plaintiff has stated a claim for fraud against Tyson because Schmitz's fraudulent statements were made in the course of his employment. [9] *See Arbour*, 534 A.2d at 1306; *Crowley*, 430 A.2d at 552.

## V.  Negligent Misrepresentation (Count VII)

Maine law defines the tort of negligent misrepresentation as follows:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies

---

[8]     The Defendants do not challenge the sufficiency of the allegations in the fraud claim against Schmitz. *See* Defs.' Mot. 11. The Plaintiff alleges that Schmitz knowingly made false statements about Robertson's corrective action for the plastic on the production line sometime between September 11–13, 2018, and that Schmitz communicated these falsehoods to Tyson in retaliation for Robertson's report to human resources and for the purposes of inducing Tyson to terminate Robertson. Compl. ¶¶ 29–32, 35. Moreover, the Complaint alleges that Tyson in fact terminated the Plaintiff in reliance on Schmitz's false representation. Compl. ¶¶ 35, 40–42. Because the Complaint alleges the "time, place, and content" of Schmitz's false statement as well as his retaliatory motive, the Complaint states a claim against Schmitz for fraud.

[9]     The Defendants argue that it is illogical to hold Tyson responsible for Schmitz's fraudulent statements when Tyson was the only recipient of those falsehoods. Defs.' Reply 5. But the Defendants fail to distinguish *Crowley v. Dubuc*, 430 A.2d 549 (Me. 1981), which the Plaintiff cited, or otherwise explain how Maine law would address this otherwise "illogical" situation. Further, even without reliance on agency principles, the Plaintiff alleges that Tyson knew of Schmitz's scheme to retaliate against the Plaintiff and that Tyson accepted and adopted that scheme. Compl. ¶ 42.

> false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Langevin v. Allstate Ins. Co.*, 66 A.3d 585, 590 (Me. 2013) (quoting *St. Louis v. Wilkinson Law Offices, P.C.*, 55 A.3d 443, 447 (Me. 2012)); *see also Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990).

The Defendants argue that the Plaintiff's negligent misrepresentation claim against Schmitz should be dismissed, and they point out in their Reply that the Plaintiff did not respond to their arguments about negligent misrepresentation. But the Defendants' motion to dismiss confused the counts they sought to dismiss,[10] which likely explains the Plaintiff's failure to respond. The Defendants will have another opportunity to attack this count at summary judgment and because this count arises from the same nucleus of facts as the Plaintiff's other counts, allowing it to survive will not significantly impact the scope of discovery. *See Am. Honda Motor Co. v. Bernardi's Inc.*, 113 F. Supp. 2d 58, 62 (D. Mass. 1999) (denying motion to dismiss count of complaint without prejudice where, *inter alia*, scope of discovery would not be impacted because other related count survived).

---

[10]  In the "Introduction" section of the motion, the Defendants argue that six counts should be dismissed. Specifically, the "Introduction" section states that, in addition to Counts I and II for failure to exhaust, "Count III (Defamation), Count V (Interference with Prospective Economic Advantage), Count VI (Fraud, against Tyson), and Count VIII (Negligence) should be dismissed." Defs.' Mot. 1–2. Negligent misrepresentation, which is Count VII of the Plaintiff's Complaint, is missing from that list. The "Argument" section of the motion then analyzes why seven counts—the six listed in the "Introduction" section plus negligent misrepresentation—fail the Rule 12(b)(6) standard. Defs.' Mot. 4–14.

19

## VI.    Negligence (Count VIII)

"A cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Bell ex rel. Bell v. Dawson*, 82 A.3d 827, 831–32 (Me. 2013).

The Defendants seek to dismiss the Plaintiff's negligence claim against Schmitz because he cannot allege that Schmitz, his coworker, owed him a duty of care. Defs.' Mot. 13–14. On a motion to dismiss under Rule 12(b)(6), the Plaintiff bears the burden of establishing the existence of a duty, assuming all of his factual allegations are true. *Sawyer v. United Parcel Serv., Inc.*, No. 1:13-CV-00269-GZS, 2014 WL 671432, at *5 (D. Me. Feb. 21, 2014).

The Plaintiff argues that Schmitz's duty to cooperate with plant inspections created a special relationship with Robertson. Compl. ¶¶ 22, 87; Pl.'s Opp'n 15. Schmitz allegedly breached that duty by both failing to engage with Robertson to create a corrective action and later by undermining it. This breach allegedly caused Robertson harm because it set into motion the chain of events that led to his termination. The Defendants retort that any duty of care to properly supervise the Tyson plant runs from Schmitz to Tyson, rather than from Schmitz to his coworkers, such as Robertson. Defs.' Reply 6.

Though the Defendants present an argument that New Hampshire would not recognize a duty of care running from Schmitz to Robertson, *see* Defs.' Reply 6 (citing *Porter v. Nutter*, 913 F.2d 37, 40 (1st Cir. 1990)), they fail to cite relevant Maine precedent or explain why Maine would follow New Hampshire precedent. Because

allowing this Count to survive will not likely impact the scope of discovery, I defer ruling on this argument, and I deny the motion to dismiss on this ground without prejudice to the Defendants' raising it again at summary judgment with a focus on whether *Maine* courts would recognize the duty of care that the Complaint alleges.

The Defendants also argue that the Plaintiff has alleged intentional bad acts, thus excluding a finding of negligence. Defs.' Mot. 13. Rule 8 of the Federal Rules of Civil Procedure allows a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see also Smith v. Jenkins*, 732 F.3d 51, 76 n.14 (1st Cir. 2013) ("A plaintiff may, of course, plead inconsistent theories of relief in the alternative."). Setting aside for now the issue of duty of care, I find that the Complaint states a claim for negligence, and I deny the Defendants' motion to dismiss the negligence count against Schmitz.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** the Defendants' motion to dismiss. (ECF No. 6.) Count V is dismissed. The Plaintiff shall have until June 25, 2020, to file an Amended Complaint that incorporates his allegations of administrative exhaustion.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 11th day of June, 2020.